# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DeQuanta Jovan Hudson,

                Petitioner,                    Case Number: 20-cv-10082

                                                Honorable Sean F. Cox

v.

Willis Chapman,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner DeQuanta Jovan Hudson filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his convictions for first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), being a felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm while committing a felony, second offense, Mich. Comp. Laws § 750.227b(1).  Petitioner, who is proceeding *pro se*, raises seven claims.  Respondent argues that Petitioner's third claim and part of his second claim are procedurally defaulted and that all of his claims are meritless.  For the reasons set forth below, the Court denies the petition and denies a certificate of appealability.  The Court grants Petitioner leave to proceed *in forma pauperis* on appeal.

I.     **Background**

Petitioner's convictions arise from the murder of Allen Shackleford on May 17,

2014, in Detroit.  The Michigan Court of Appeals summarized the evidence presented at

trial as follows:

> Riccardo Martin and Jermayne Fuller testified that they were with Allen
> Shackleford at a well-known "hang-out area" when, shortly before dark,
> Hudson drove up in a gray Cadillac and waited for some time.  Fuller asked
> who Hudson was and Shackleford answered.  Martin also responded to the
> question and identified him as "Tay." Hudson responded, "[O]kay I'll show
> yaw mother f* * * ers I'll be back."  He then drove away.
>
> Fuller felt threatened, but the group went back to what they were doing.
> After 30 to 40 minutes, Shackleford and some friends walked to the corner
> store.  Fuller followed a couple of steps behind because he was "still
> paranoid."  Martin stated that, as he came out of the store, Hudson was
> there on foot.  He fell in step with Martin and said, "[L]et me holler at you."
> As Martin and Hudson walked to the corner, Hudson said, "You been
> knowing me all my," but did not finish the sentence because, as they turned
> the corner, he saw Shackleford.  Hudson immediately pulled a gun. He said
> to Shackleford, "[t]hat tough shit you was on." Shackleford replied, "I
> wasn't on no tough shit with you."  Hudson struggled with Shackleford and
> one or two shots were fired.  Shackleford fell to the ground with a fatal
> gunshot wound to the head.  Hudson said, "[D]on't tell on me" and ran
> away.

*People v. Hudson*, No. 325035, 2016 WL 930936, at *1 (Mich. Ct. App. Mar. 10, 2016).

Petitioner was convicted by a jury in Wayne County Circuit Court and, on October

27, 2014, he was sentenced to life in prison without the possibility of parole for first-

degree murder, 40 to 60 months for being a felon in possession, and 5 years for felony

firearm.

Petitioner filed an appeal in the Michigan Court of Appeals claiming that

insufficient evidence supported the first-degree murder conviction, he was denied his

right of confrontation by admission of hearsay testimony, admission of unduly prejudicial evidence denied him a fair trial, and counsel was ineffective for failing to file a motion to suppress prejudicial evidence. The Michigan Court of Appeals affirmed Petitioner's convictions. *Id.* Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims denied by the court of appeals and a new claim that the trial court improperly usurped the role of the jury by making credibility determinations. On September 6, 2016, the Michigan Supreme Court denied leave to appeal. *People v. Hudson*, 500 Mich. 856 (Mich. 2016).

Petitioner filed a motion for relief from judgment in the trial court raising three ineffective assistance of counsel claims and an ineffective assistance of appellate counsel claim. The trial court denied the motion. *People v. Hudson*, No. 14-004733-01-FC (Wayne County Circuit Ct. Nov. 7, 2018). Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. On May 17, 2020, the Michigan Court of Appeals denied leave to appeal. *People v. Hudson* No. 348843 (Mich. Ct. App. May 17, 2019). The Michigan Supreme Court also denied leave to appeal. *People v. Hudson*, 504 Mich. 1000 (Mich. Oct. 28, 2019).

Petitioner then filed this petition for a writ of habeas corpus. He claims:

I. The petitioner was denied due process when he was convicted of first-degree premeditated murder on the basis of legally insufficient evidence where the evidence established that the shooting occurred during the course of a struggle and was not premeditated.

II. The court denied Mr. Hudson his right to a fair and impartial trial by erroneously allowing Officer Williams's improper and prejudicial testimony including hearsay statement of the identification, which denied the petitioner his Sixth Amendment right of confrontation and his right to

3

due process; if counsel failed to adequately object, the petitioner was denied his right to effective assistance of counsel.

III. The admission of unduly prejudicial evidence denied Mr. Hudson a fair trial; in addition, trial counsel was ineffective for failing to object or seek pretrial suppression of the weapon and sweatshirt, which were discovered after a search of the residence where Mr. Hudson was arrested.

IV. The petitioner was denied the right to a fair proceeding when the Court of Appeals usurped the jury's role as the sole finder of fact in making credibility judgments on evaluating conflicting witness's testimony.

V. Trial counsel failed during pretrial to file a motion for an independent expert to testify on behalf of the defense about the sweatshirt residue and failed to object to the evidence being entered without properly being tested for its authenticity of gun powder residue.

VI. Trial counsel showed deficient performance during the pretrial proceedings for failing to file a motion to suppress identification where the lead police investigator showed a single photo of Mr. Hudson to the witnesses before having them come to the police station to identify the petitioner in a line up

VII. Trial counsel showed deficient performance by failing to instruct the jury on the lesser included offense of manslaughter where the facts during trial showed there was a struggle between the victim and the petitioner before shots were fired.

## II.    Legal Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Further, "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

A state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358,

360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. **Discussion**

### A. Sufficiency of the Evidence (Claim I)

In his first claim, Petitioner argues that insufficient evidence supports his first-degree premeditated murder conviction. He argues that the evidence showed that the shooting occurred during a struggle and was not premeditated.

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)) (emphasis in *Brown*). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* In short, "deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; [then] deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citation omitted). The *Jackson* standard is "exceedingly general" and therefore Michigan courts are afforded "considerable leeway" in its application. *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011).

Under Michigan law, to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate. *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995). Premeditation and deliberation may be established by evidence showing: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 194 Mich. App. 158, 170 (1992). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466 (1993), including the defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398 (1997).

The Michigan Court of Appeals held sufficient evidence was presented to sustain Petitioner's first-degree murder conviction:

> Hudson argues that the confrontation that led to the shooting was spontaneous; specifically, he maintains that, at best, his remark was a show of bravado, not evidence of premeditation. Courts have held that it is insufficient to establish premeditation and deliberation when the killing occurred during a sudden fight, unless there was a pause in the action after which the defendant chose to continue the attack. *See Morrin*, 31 Mich. App. at 329-331, 331 n. 47. There was no pause in the action in this case once the physical altercation started. However, the altercation was not a sudden fight.
>
> The evidence showed that Hudson had earlier told Shackleford and his friends that he was coming back to show them all. The evidence that he left, but not before warning that he would return, permitted an inference that Hudson left for a reason related to his threat-namely, to arm himself. *See People v. Crawford*, 30 Mich. App. 221, 222; 186 N.W.2d 90 (1971). The evidence also showed that he returned and confronted Shackleford's friends; the fact that Hudson returned belies his argument that this statement

7

was merely bravado.  Moreover, when he saw Shackleford after his return, he immediately drew his gun and told Shackleford "[t]hat tough shit you was on."  From this, a reasonable jury could infer that Hudson returned with the intent to use the gun.  It could also reasonably infer that Hudson immediately drew his gun on Shackleford and exclaimed that Shackleford was on "tough shit" because he intended to shoot Shackleford. That there was evidence that Shackleford and Hudson struggled did not alter the fact that there was evidence from which the jury could infer that Hudson intended to kill Shackleford even before the struggle.[1] *See Unger*, 278 Mich. App. at 228-229 (noting that the jury is free to believe or disbelieve, in whole or in part, any of the evidence presented at trial).

There was sufficient evidence from which a reasonable jury could find beyond a reasonable doubt that Hudson killed Shackleford with premeditation and deliberation.

_____

[1]Testimony by the medical examiner also supported a finding that the fatal gunshot was not fired during a mutual struggle as there was no evidence of close range firing.

*People v. Hudson*, No. 325035, 2016 WL 930936, at *2 (Mich. Ct. App. Mar. 10, 2016).

The Michigan Court of Appeals' conclusion is supported by the record.  While there was evidence of a struggle, it was not unreasonable for the state court to conclude that Petitioner's statement before the shooting and the fact that he returned a short time later with a gun were sufficient to establish premeditation.  Based on this evidence and the deference owed state-court decisions on sufficiency-of-evidence claims, this Court cannot say that the Michigan Court of Appeals' decision was contrary to, or unreasonable application of, clearly-established federal law.

8

B. Officer Williams' Testimony  (Claim II)

In his second claim, Petitioner argues that portions of police officer Douglas

Williams' testimony constituted inadmissible hearsay, violated his right of confrontation,

amounted to improper opinion testimony, and portrayed Petitioner as a dangerous

individual who previously engaged in criminal conduct.[1]  Petitioner also contends that

defense counsel was ineffective for failing to object to this evidence.

1.

Williams testified that he canvassed homes near where the shooting occurred on

the night of the shooting.  He showed some residents, including Crystal Johnson, a six-

person photographic lineup.  Williams testified that Johnson identified Hudson from the

photos and told him that Hudson typically drove a white Ford Explorer but drove a gray

Cadillac that night.  Johnson did not testify.  Defense counsel objected on the ground that

this was inadmissible hearsay testimony.  The trial court admitted the testimony for the

limited purpose of establishing why the investigation proceeded as it did.  On appeal, the

Michigan Court of Appeals held that Johnson's out-of-court statements were properly

admitted for the reason stated by the trial court.  *Hudson*, 2016 WL 930936, at *3.

Petitioner's argument that the admission of this evidence violated Michigan Rules

of Evidence fails to state a basis for federal habeas corpus relief.  Errors of state law,

particularly the alleged improper admission of evidence, do not allege a constitutional

---

[1] Respondent asserts that part of this claim is procedurally defaulted.  Procedural default is not a
jurisdictional bar to review of a habeas petition on the merits.  *See Hudson v. Jones*, 351 F.3d
212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)) ("[F]ederal
courts are not required to address a procedural-default issue before deciding against the
petitioner on the merits.").  The Court finds that the interests of judicial economy are best served
by addressing the merits of this claim.

violation upon which habeas relief may be granted. *See Estelle v. McGuire*, 502 U.S. 62 (1991).

Petitioner also argues that admission of this testimony violated the Confrontation Clause. Out-of-court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington*, 541 U.S. 36 (2004). The Michigan Court of Appeals held that even if the testimony was improperly admitted, any error was harmless. *Hudson*, 2016 WL 93096 at *3-4. The state court reasoned that two other witnesses, Fuller and Martin, "testified that they saw Hudson stop in the gray Cadillac, heard the words exchanged, and heard him say he'd be back to 'show them' right before he drove away." *Id.* In light of this testimony, the state court held that any error in admitting the testimony about Johnson's out-of-court statement was harmless. *Id.*

On federal habeas review, relief may not be granted "based on trial error unless [a petitioner] can establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). Further, a state court's decision that an error was harmless constitutes an adjudication "on the merits" to which the highly deferential AEDPA standard applies. *Davis v. Ayala*, 576 U.S. 257, 269

10

(2015).  In short, this Court may not grant relief unless the state court's "'*harmlessness*

*determination itself* was unreasonable.'"  *Id.* (quoting *Fry v. Pliler*, 551 U.S. 112, 119

(2007)) (emphasis in *Fry*).

The Court sees nothing in the record which would call into question the Michigan

Court of Appeals' determination that any error was harmless. Relief is denied on this

claim.

2.

Next, Petitioner argues that Williams improperly expressed his opinion that

Petitioner was guilty.  Specifically, Petitioner objects to the following exchange:

> *Q*: And do you recall the description that they give [sic] you of this individual?
>
> *A*: Black male, medium complexion, wearing braids had braids wearing a pink hat. Had a winter jacket on.
>
> *Q*: Okay. Um, and did you get a name at any point in time?
>
> *A*: They called him Tay.
>
> *Q*: Did you ever learn who Tay was?
>
> *A*: Yes, eventually.
>
> *Q*: Who did you come to learn that Tay was?
>
> *A*: Dequanta Hudson.

*Hudson*, 2016 WL 930936, at *4.

The Michigan Court of Appeals held that this testimony was not an improper

expression of Williams' belief in Petitioner's guilt.  *Id.*  Instead, Williams properly

"testified as to facts: the fact that witnesses identified the shooter as Tay and that

11

[Williams] subsequently learned that Hudson was known by that name." *Id.* The state court record supports the court of appeals' conclusion and Petitioner has not shown that the decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

3.

Petitioner also argues that Williams improperly testified he was given additional information about Petitioner "from a previous case" and that neighbors were reluctant to talk to police because they feared Petitioner.

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting other acts evidence against him does not entitle him to relief because this claim is non-cognizable on federal habeas review. *See Estelle*, 502 U.S. at 72 (finding that the Supreme Court's habeas powers did not permit the Court to reverse a state-court conviction based on its belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law).

The admission of other acts evidence against Petitioner at his state trial does not entitle him to habeas relief because there is no clearly established Supreme Court law that holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of prior bad acts evidence. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Moreover, Williams' references to Petitioner's prior case and witnesses' fear were so vague and brief that their admission did not render the trial fundamentally unfair.

12

4.

Finally, Petitioner argues that counsel was ineffective in failing to raise appropriate objections to Williams' testimony.  An ineffective assistance of counsel claim has two components.  *Strickland v. Washington*, 466 U.S. 668 (1984).  A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense.  *Id.* at 687.  To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness."  *Id.* at 688.  In order to establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different.  *Id.* at 694.

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Burt v. Titlow*, 571 U.S. 12, 19-20 (2013).  In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so."  *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted).  "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

The Michigan Court of Appeals held that counsel was not ineffective for failing to object to Williams' testimony because the objection would have been meritless.  *Hudson*, 2016 WL 930936, at *9.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial," *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013), and the

state a court's conclusion that defense counsel was not ineffective was objectively reasonable.  The admission of an out-of-court testimonial statement does not violate a defendant's right to confrontation where the statement is not offered for the truth of the matter asserted.  *United States v. Gibbs*, 506 F.3d 479, 486 (6th Cir. 2007).  Petitioner has not shown that the state court's holding that Johnson's out-of-court statements were not hearsay was incorrect.  Therefore, he has not shown that the state court's decision denying this claim was contrary to, or an unreasonable application of, *Strickland*.

Neither did counsel perform deficiently in not objecting to Williams' testimony that he received information about Petitioner "from a previous case" or that witnesses were reluctant to talk to police because they feared Petitioner.  The state court held that counsel was not ineffective because the testimony was admissible under state rules of evidence.  *Hudson*, 2016 WL 930936 at *9.  The Court "must defer to state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition."  *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quotation omitted).  As a result, counsel's failure to object to evidence was not ineffective assistance of counsel.  *See United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005) (holding that counsel is not ineffective for failing to object to admissible evidence).

C.  Admission of Testimony Regarding Gun and Sweatshirt (Claim III)

Petitioner's third claim concerns the admission of evidence discovered pursuant to a search warrant.[2]  Several days after the shooting, police arrested Petitioner at a home located at 5090 Devonshire.  Officers obtained a search warrant and entered the home. Special Agent Jason Salerno entered the home with his canine partner Jax.  Salerno testified that Jax is trained to alert to explosives, bullets, shell casings, firearms, and gun powder residue.  (ECF No. 11-9, PageID.385.)  While in the home, Jax alerted to a suit, which was found to have a .22 caliber Derringer handgun in the pocket, and to a gray sweatshirt.  (*Id.* at PageID.390-393.)  Police officer Treva Eaton testified that the sweatshirt seized pursuant to the warrant appeared to be the same sweatshirt Petitioner was wearing when he entered the home.

Petitioner argues that testimony regarding the Derringer was improperly admitted because the evidence was irrelevant and highly prejudicial.  The Michigan Court of Appeals held that "there was no proper purpose" for admission of this evidence because the Derringer was not the type of gun used "nor was it apparently relevant to any other fact or issue in the case."  *Hudson*, 2016 WL 930936 at *5.  The state court held that Petitioner, nevertheless, was not entitled to relief because the error was harmless:

> The concern about other acts evidence is that the jury might convict a defendant for one crime because it is assumed from the other acts evidence that the defendant had a propensity to commit crimes.  *See People v. DerMartzex*, 390 Mich. 410, 413; 213 N.W.2d 97 (1973). In this case, even if no reference had ever been made to the Derringer, the jury would have known that Hudson had committed prior acts that resulted in his conviction

---

[2] The Court finds the interests of judicial economy are best served by bypassing Respondent's procedural default argument and addressing the merits of this claim.  *Lambrix*, 520 U.S. at 525.

of a felony that made it illegal for him to possess a firearm in Michigan. The jury heard the parties stipulate that Hudson was ineligible to possess a firearm at the time this crime was committed because he had been "convicted of a prior specified felony," and the prosecutor repeated that information in the closing statement. Moreover, although the jury might draw an adverse inference as a result of the evidence that he possessed a different firearm, it is highly unlikely that this evidence prejudiced his trial given the strong evidence that he used a different firearm to shoot and kill Shackleford.

*Hudson*, 2016 WL 930936, at *5.

Having reviewed the record, the Court agrees that given the other evidence admitted at trial and the general irrelevance of this particular evidence to the case, its admission was harmless and did not affect the outcome at trial. More importantly, for purposes of federal habeas review, the Michigan Court of Appeals' decision to that effect was reasonable.

Petitioner also challenges the admission of testimony that an explosives-detecting dog alerted to a sweatshirt a witness identified as having been worn by Petitioner. The dog's handler testified that the dog alerted in the manner he had been trained to do when some sort of explosive residue had been detected. Petitioner argues that this evidence should not have been admitted under Michigan Rule of Evidence 702 and that the trial court failed to consider the testimony's admissibility under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1999).

The Michigan Court of Appeals found this evidence admissible under Rule 702 and *Daubert*. *Hudson*, 2016 WL 930936 at *8. The state court noted that the handler's testimony established that he and the dog were trained and tested annually and the dog

16

would not qualify for the program if he did not test at 100% accuracy for at least two years. *Id.*

Petitioner's claim that admission of this evidence violated Mich. R. Evid. 702 fails to state a cognizable claim. *Estelle*, 502 U.S. at 67-68. In addition, "screening evidence through *Daubert's* standards is not constitutionally required", *Bojaj v. Berghuis*, 702 F. App'x 315, 320 (6th Cir. 2017), and *Daubert* "cannot serve as a basis for granting habeas corpus relief." *Thomas v. Jackson*, No. 17-1813, 2018 WL 3491763, at *3 (6th Cir. Feb. 13, 2018).

Finally, the Michigan Court of Appeals' held that counsel was not ineffective for failing to move to suppress the sweatshirt- and gun-related evidence:

> Hudson argues that his lawyer was ineffective because she failed to make a pretrial motion to suppress evidence concerning the Derringer and the sweatshirt and failed to object when the evidence was given at trial. The prosecutor established a proper foundation for the admission of the sweatshirt. Failing to object to admissible evidence does not amount to ineffective assistance. … The Derringer, in contrast, had no relevance and may have been precluded had there been an objection. The failure to object, however, could have been a matter of trial strategy. While it is true that the jury could have inferred from the Derringer that Hudson had a propensity to commit crimes with guns, it seems just as likely that the jury would view it as exculpatory because the expert testimony established absolutely that it was not the murder weapon and it was the only weapon found. Hudson, therefore, has failed to overcome the presumption that his lawyer's decision was a matter of sound trial strategy.

*Hudson*, 2016 WL 930936, at *9.

The state court identified the correct standard applicable to this claim, and applied a "strong presumption" that trial counsel's actions were based on "sound trial strategy" and were, therefore, not deficient. *Strickland*, 466 U.S. at 688-89. It was not

unreasonable for the state court to defer to counsel's decision that admission of the

Derringer could bolster the defense, particularly where the risk of harm to the defense

was low.  Neither was counsel ineffective for failing to move to suppress the sweatshirt

because the evidence was admissible under state law and counsel is not required to raise a

meritless objection.

Habeas relief is denied for this claim.

D.  State Court's Credibility Determinations (Claim IV)

In his fourth claim, Petitioner argues that the Michigan Court of Appeals "usurped

the jury's role as the sole finder of facts, in making credibility judgments on evaluating

conflicting witness's testimony."  (ECF No. 1, PageID.22.)  Petitioner provides no further

support or factual allegations regarding this claim.  While the Court affords *pro se*

litigants significant leeway, and their pleadings liberal construction, *Haines v. Kerner*,

404 U.S. 519, 520-21 (1972), the Court will not construct claims on behalf of *pro se*

litigants.  *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985) (Federal

court is not charged with constructing arguments never presented by a *pro se* litigant

because "to do so would ... transform the district court from its legitimate advisory role to

the improper role of an advocate seeking out the strongest arguments and most successful

strategies for a party.").  Therefore, because Petitioner provides no argument in support of

his claim, he is not entitled to habeas corpus relief.

E.  Ineffective Assistance of Counsel (Claims V, VI, & VII)

Finally, Petitioner argues that he was denied the effective assistance of counsel.

Specifically, he alleges that counsel was ineffective for: (i) failing to request an expert to

18

testify regarding the sweatshirt and gunshot residue; (ii) failing to move to suppress identification testimony based on an impermissibly suggestive pretrial identification procedure; and (iii) failing to request a voluntary manslaughter instruction.

As set forth above, to establish that counsel was ineffective a petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687.

First, Petitioner argues that counsel was ineffective for failing to request an "independent expert to testify on behalf of the defense about the sweatshirt residue." (ECF No. 1, PageID.19). A habeas petitioner's claim that trial counsel was ineffective for failing to consult or call an expert witness cannot be based on speculation. *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). Petitioner presents no evidence that an expert witness would have been willing to testify in a manner favorable to the defense. In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to consult or call an expert witness. *Id.* at 557 (rejecting petitioner's ineffective-assistance claim arising from counsel's failure to call a particular witness because the petitioner "offered no evidence, beyond his assertions, to prove what the content of [the witness's] testimony would have been"). *See also Burt v. Titlow*, 571 U.S. 12, 23 (2013) ("It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'") (quoting *Strickland*, 466 U.S. at 689).

Next, Petitioner maintains the counsel should have moved to suppress the identification testimony because it was based on an impermissibly suggestive pretrial

identification procedure. A pretrial identification procedure raises due process concerns "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 238-39 (2012). When police have used an unnecessarily suggestive identification procedure, suppression of the resulting identification is not the inevitable consequence. *Id.*

Here, Petitioner appears to rest his argument on a Detroit police report which Petitioner attached to his state court motion for relief from judgment. (ECF No. 11-14, PageID.636.) The report, apparently authored by police officer Douglas Williams, states that unidentified individuals told Williams that the shooter's name was "Tay." (*Id.*) Williams then showed the unidentified individuals a picture of Petitioner and they "got real qui[e]t, eyes got wide and said they weren't saying anything else." (*Id.*) Petitioner argues that the unidentified individuals were two prosecution witnesses and that the suggestive single photograph identification corrupted the witnesses' in-court identifications. Two prosecution witnesses, Ricardo Martin and Jermayne Fuller, identified Petitioner at trial, but Petitioner fails to show that the police report concerns Martin or Fuller. Absent such a showing, Petitioner cannot establish that counsel was ineffective for failing to seek suppression of their identification testimony.

Finally, Petitioner argues that defense counsel was ineffective for failing to request a voluntary manslaughter instruction. He maintains that evidence that the shooting occurred during a struggle and without premeditation supported such an instruction. The trial court held that the instruction was not supported by the evidence:

20

> Finally, with regard to Defendant's third sub-issue that trial counsel was ineffective to [sic] failing to request a jury instruction on manslaughter where there was overwhelming evidence that the fatal shooting did not take place in the context of a sudden fight, but rather escalated from a remark Defendant considered "a show of bravado," to Defendant's heated departure after which he returned armed, and ended in death. Therefore, even had his argument not been procedurally barred by the Court Rules, this Court finds no merit in the substance of his motion.

(ECF No. 11-15, PageID.649.)

The Michigan Court of Appeals' opinion was not contrary to, or an unreasonable application of, Supreme Court precedent. "Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief." *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012). "[T]he Constitution does not requires a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). Even where a lesser offense instruction is requested, the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc). Relief lies for such a claim only when the "instruction is so flawed as a matter of state law as to 'infect[] the entire trial' in such a way that the conviction violates due process." *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). Where, as here, a state appellate court has assessed the necessity and adequacy of a particular jury instruction under state law, a federal habeas court cannot question that state-law finding. *Davis v. Morgan*, 89 F. App'x 932, 936 (6th Cir. 2003).

The Michigan Court of Appeals' conclusion that the evidence did not support a voluntary manslaughter instruction is supported by the record.  Petitioner has not established that the jury instructions, taken as a whole, rendered his trial fundamentally unfair.  *See Estelle*, 502 U.S. at 72 (a requested jury instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record") (internal quotation marks and citation omitted)).  Further, because the jury instructions were not improper, Petitioner fails to establish that defense counsel was ineffective in failing to object.  *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir.2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").  Petitioner is not entitled to habeas relief on this claim.

## IV.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253.  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

**V.  <u>Conclusion</u>**

The petition for a writ of habeas corpus and a certificate of appealability are

**DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

The Court **GRANTS** Petitioner leave to proceed on appeal *in forma pauperis*

because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

**SO ORDERED**.


<u>s/Sean F. Cox</u>
Sean F. Cox
United States District Judge

Dated:  February 3, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record
on February 3, 2023, by electronic and/or ordinary mail.

<u>s/J.  McCoy</u>
Case Manager